ZAHRA, J.
(concurring in part and dissenting in part). This case primarily addresses a single statute, MCL 129.207, under the public works bond act (PWBA).[1] I *168 agree with my colleagues that this statute does not require a claimant to provide actual notice of his or her claim to the principal contractor. A claimant need only provide notice “by mailing the same by certified mail, postage prepaid, in an envelope addressed to the principal contractor . . . .”[2] Wyandotte Electric Supply Company satisfied the statutory requirements of notice in this case. I therefore agree with Part II of the majority opinion. I write separately because I disagree with the majority’s conclusion that Wyandotte may claim attorney fees and a time-price differential under the payment bond. And while I agree that MCL 600.6013(8) should govern the calculation of postjudgment interest in this case, I disagree with my colleagues’ reasoning for rejecting the use of MCL 600.6013(7).
I. ATTORNEY FEES AND THE TIME-PRICE DIFFERENTIAL
My disagreement with the majority arises under the first sentence of MCL 129.207, which states:
A claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of section 3, and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon.[3]
*169 The majority views the “sum justly due” under this statute as “the amount provided for in the claimant’s contract, regardless of whether the principal contractor and its surety have agreed to that contract’s terms.”[4] The majority adopts this view not based on the language of the statute, but rather on “the absence of any further direction from the Legislature regarding how the amount unpaid ought to be determined . . . .”[5] The majority then compensates for this supposed legislative shortcoming by imposing its own view that “the most logical recourse is to the claimant’s underlying contract, which best illustrates the intent and expectations of the parties to the contract.”[6]
The majority’s analysis rests on a false premise. The principal contractor, KEO & Associates, Inc., was not a party to the claimant’s underlying contract. The contract between subcontractor Electrical Technology Systems, Inc. (ETS) and remote subcontractor Wyandotte can only illustrate the intent and expectations of ETS and Wyandotte. Indeed, KEO did not contractually agree to pay any of its subcontractors, including ETS, a time-price differential or attorney fees, and there is no basis from which to conclude that KEO would have agreed to pay a time-price differential or attorney fees to a party with whom it had no contractual relationship.
There is no dispute among my colleagues that MCL 129.207 provides a remote subcontractor with a right of action on the payment bond even though it lacks a *170 direct contractual relationship with the principal contractor. However, simply because a remote subcontractor may sue on the payment bond under MCL 129.207 does not suggest that its claim is determined by a contract to which the principal contractor who furnished the payment bond was not a party. The only contract mentioned by the Legislature in MCL 129.207 is the “contract in respect of which payment bond is furnished,” which necessarily cannot include a remote subcontractor. Under Michigan law, a remote contractor’s claim arises solely under the PWBA, which alone forms the basis to assess its claim.
Further, MCL 129.207 does not suggest that the principal contractor must wholly indemnify claimants under the PWBA. Rather, MCL 129.207 refers to the extent of a principal contractor’s liability under the payment bond by identifying the claimant’s “labor or material in the prosecution of the work” for which the claimant “has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made .. ..” This provision identifies the labor and materials that form the basis of the “amount, or the balance thereof, unpaid at the time of institution of the civil action” that the claimant may bring such action for “the sum justly due him .. ..” While a subcontractor has an actual contract with the principal contractor to determine the labor and materials it may seek to recoup under the payment bond, a remote contractor does not have a direct contractual relationship with the principal contractor. For this reason, MCL 129.207 provides, in regard to remote subcontractors, that the claimant must provide notice “within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which *171 the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.” This notice, as in this case, identifies the labor and materials that the remote contractor has supplied. The “sum justly due” thus includes the labor and materials previously identified in the 90-day notice that the claimant has supplied but for which the claimant has not been paid. The only other statutory basis to impose liability on the payment bond is MCL 129.206, which provides that “ ‘DJabor and material’ includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.” That the Legislature expressly provided for recovery of these incidental expenses, and these incidental expenses alone, strongly suggests that incidental expenses not expressly identified are not recoverable as “labor and material.”[7]
To the extent that attorney fees and a time-price differential may even be considered incidental damages, as opposed to remote damages, they are simply not recoverable. Further, and perhaps more telling, is that even expenses expressly identified cannot be recovered unless they are “directly applicable to the contract.”[8] Again, the only contract mentioned in MCL 129.207 is the “contract in respect of which payment bond is furnished ...” No real argument can be made *172 that attorney fees are directly related to the contract in respect of which payment bond is furnished.[9] And while a colorable argument can be made that a time-price differential is directly applicable to the contract, a time-price differential is not identified by the Legislature as “[l]abor and material” costs that may be recovered.[10]
Further, MCL 129.203 provides:
The payment bond shall be in an amount fixed by the governmental unit but not less than 25% of the contract amount solely for the protection of claimants, as defined in [MCL 129.206], supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract.
The principal contractor’s liability to remote contractors under the PWBA is solely based on the payment bond. The amount of the payment bond is fixed by the governmental unit at no less than 25% of the contract. If a claimant successfully sues on the pay *173 ment bond and exhausts the payment bond, which may represent as little as 25% of the contract, a remote contractor that later sues no longer has legal recourse to recover against the bond furnished by the principal contractor. Remote subcontractors only have a right to sue the principal contractor on the bond because the PWBA permits a suit despite the absence of a direct contractual relationship. Significantly, any awards received under the PWBA cannot cumulatively exceed the amount of the payment bond.
This limitation of the principal contractor’s liability to remote subcontractors is precisely the reason that the PWBA does not provide for remote subcontractors to seek to enforce any and all collateral terms in the underlying contract. If a single claimant or several claimants exhaust the payment bond through an award of a time-price differential and attorney fees, another remote contractor may not be able to recoup the actual labor and materials it supplied for the public project. By green-lighting the recovery of remote damages found in the underlying contracts between subcontractors and remote subcontractors, the majority arbitrarily countenances the shortchanging of other remote contractors. In my view, this effectively thwarts the Legislature’s intent that the payment bond be used “solely for the protection of claimants . . . .” MCL 129.203. The majority has clearly departed from the statutory language by imposing liability for the amount provided for in the claimant’s contract, regardless of whether the principal contractor and its surety have agreed to that contract’s terms.
II. POSTJUDGMENT INTEREST
The trial court awarded Wyandotte postjudgment *174 interest under MCL 600.6013(7)[11] at the time-price differential rate specified in the contract between Wy-andotte and ETS. Because I disagree that Wyandotte is entitled to a time-price differential under the PWBA, I would reverse the trial court’s award of postjudgment interest on that basis alone. The majority concluded MCL 600.6013(7) does not apply here because the judgment was not rendered on a written instrument. Accordingly, the majority concluded that postjudgment interest must be calculated under the general statute for determining interest on a money judgment in a civil case, MCL 600.6013(8). I agree with the majority that MCL 600.6013(8) should govern the calculation of postjudgment interest, but I disagree with the majority that “[t]he judgment here was not rendered on a written instrument.”[12]
The majority holds that judgment was rendered on Wyandotte’s statutory claim rather than on the contract itself. This holding misses the entire point of the PWBA. MCL 129.207 expressly provides that a claimant “may sue on the payment bond . . . .”[13]
The payment bond provides that KEO and Westfield Insurance Company
*175 are held and firmly bound unto Detroit Public Library . . . as Obligee ... for the use and benefit of claimants ... in the amount of... $1,302,040.00 ... for the payment whereof [KEO] and [Westfield] bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.
The payment bond expressly incorporates the contract between KEO and the library, and then provides:
THE CONDITION OF THIS OBLIGATION is such that if [KEO] shall promptly make payment to all claimants, as defined in [the PWBA], who have complied with all the provisions of the [PWBA], for labor and materials used in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect.
The payment bond is clearly an “instrument” in that it is a “written legal document that defines rights, duties, entitlements, or liabilities . .. ”[14] But regardless of whether a payment bond that secures future payment may be considered a written instrument “evidencing indebtedness,” neither the payment bond nor the contract incorporated by the payment bond contain “a specified interest rate.”[15] Therefore, while I disagree with my colleagues’ reasoning on this issue,[16] I nonetheless agree with the result reached that interest on the judgment should be calculated based on MCL 600.6013(8).
III. CONCLUSION
I agree with the majority that a claimant need not provide actual notice to the principal contractor under *176 the PWBA. I disagree with the majority however that the PWBA entitles a claimant to the amount provided for in the claimant’s contract, regardless of whether the principal contractor and its surety have agreed to that contract’s terms. Rather, a claimant’s recovery is limited to labor and materials under the PWBA and does not include incidental expenses not provided for by the PWBA, such as time-price differentials and attorney fees. Finally, I agree with the majority’s conclusion that interest on the judgment should be calculated based on MCL 600.6013(8). Under the PWBA, judgment is rendered on the payment bond, which is a written instrument evidencing indebtedness. But because this bond contained no specified interest rate, MCL 600.6013(7) does not apply.

 MCL 129.201 et seq.

 MCL 129.207.

 Under MCL 129.206, the term “claimant” means “a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract.” For purposes of this opinion, a *169 claimant who lacks a direct contractual relationship with the principal contractor, such as plaintiff Wyandotte, is referred to as a “remote subcontractor” while a claimant who has a direct contractual relationship with the principal contractor is referred to as a “subcontractor.”

 Ante at 147.

 Ante at 147.

 Ante at 147.

 Under the doctrine of expressio unius est exclusio alterius, the express mention in a statute of one thing implies the exclusion of other similar things. In re MCI Telecom Complaint, 460 Mich 396, 415; 596 NW2d 164 (1999). As applied to statutory interpretation, the doctrine reflects, “among other things, a legislative intent not to create liability outside the extent to which the legislature has acted.” 22 Mich Civ Jurisprudence, Statutes, § 194.

 MCL 129.206.

 On this point, I am in agreement with Chief Justice Young’s partial concurrence and dissent. As he states, ante at 163-164:
The language of [the attorney fee provision] indicates that attorney fees are unrelated to the cost of materials because, unlike the time-price differential, they bear no relation to the cost of supplying labor or materials. The attorney fee provision creates a penalty for collection efforts rather than determining Wyandotte’s expectancy—i.e., the price ETS owed for materials Wyandotte supplied. Indeed, it does not appear to be an attorney fee provision at all, because it does not define itself in terms of actual or reasonable attorney fees. It is, in fact, a liquidated damages clause that plaintiff could invoke if it placed an overdue debt into the hands of a collecting attorney. Because this provision describes a liquidated collection cost rather than a cost of the labor or materials themselves, it is not part of the sum justly due.

 See MCL 129.206.

 MCL 600.6013(7) provides:
For a complaint filed on or after July 1, 2002, if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. The rate under this subsection shall not exceed 13% per year compounded annually. [Emphasis added.]

 Ante at 163.

 Emphasis added.

 Black’s Law Dictionary (10th ed).

 MCL 600.6013(7).

 I also disagree with Chief Justice Young that the agreement between Wyandotte and ETS was as much the basis for the trial court’s judgment as the statute itself.